No. 25-10754

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

KNIFE RIGHTS, INCORPORATED; RUSSELL ARNOLD; RGA Auction Solution, doing business as Firearm Solutions; JEFFERY FOLLODER; MOD Specialties; EVAN KAUFMANN; ADAM WARDEN; RODNEY SHEDD,

*Plaintiffs-Appellants*,

v.

PAMELA BONDI, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellee*.

_____

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division
_____

**BRIEF OF *AMICUS CURIAE* MOUNTAIN STATES LEGAL FOUNDATION'S CENTER TO KEEP AND BEAR ARMS IN SUPPORT OF APPELLANTS AND REVERSAL**
_____

William E. Trachman
Grady J. Block
Michael D. McCoy (Application for Admission to be Filed)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO 80227
(303) 292-2021
wtrachman@mslegal.org

*Attorneys for Amicus Curiae Mountain States Legal Foundation's Center to Keep and Bear Arms.*

# Certificate of Interested Persons[1]

Pursuant to this Court's Rule 29.2 and Federal Rule of Appellate Procedure 26.1, Mountain States Legal Foundation submits this certificate of interested persons to fully disclose all those with an interest in this motion and provide the required information as to their corporate status and affiliations.

The undersigned counsel of record certifies that the following listed entity and as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case, in addition to those listed in the briefs of the parties. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

*Amicus Curiae*: Mountain States Legal Foundation, a Colorado 501(c)(3) organization. MSLF is not publicly traded and has no parent corporation. There is no publicly held corporation that owns ten percent or more of its stock.

*Counsel for Amicus*: William E. Trachman, Grady J. Block, and Michael D. McCoy of Mountain States Legal Foundation, Lakewood, Colorado.

/s/ William E. Trachman

William E. Trachman

---

[1] Pursuant to Fed. R. App. P. 29, both parties have consented to the filing of this amicus curiae brief. Pursuant to Fed. R. App. P. 29(a)(4)(E), the undersigned affirms that no counsel for a party authored this brief in whole or in part, and no person or entity other than Mountain States Legal Foundation, or its counsel, made a monetary contribution specifically for the preparation or submission of this brief.

i

# TABLE OF CONTENTS

                                                                            **Page**

CERTIFICATE OF INTERESTED PERSONS ......................................... i

TABLE OF CONTENTS ............................................................................ ii

TABLE OF AUTHORITIES ...................................................................... iii

IDENTITY AND INTEREST OF AMICUS CURIAE ............................ 1

INTRODUCTION ....................................................................................... 2

ARGUMENT ................................................................................................ 4

I.     THE FEDERAL SWITCHBLADE ACT OF 1958 REGULATES CONDUCT COVERED BY THE PLAIN TEXT OF THE SECOND AMENDMENT. ................................................................. 4

II.    THE COURT MAY WISH TO CONSIDER SEVERAL RECENT CASES SUPPORTING APPELLANTS' ARGUMENTS. ............. 9

CONCLUSION ............................................................................................ 12

CERTIFICATE OF SERVICE .................................................................... 13

CERTIFICATE OF COMPLIANCE .......................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                       **Page(s)**

*Andrews v. State*,
  50 Tenn. 165 (1871) .................................................................................... 9

*Beckwith v. Frey*,
  766 F.Supp.3d 123 (D. Me. Feb. 13 2025) ................................................. 9

*Commonwealth v. Canjura*,
  494 Mass. 508, 240 N.E.3d 213 (2024) ...................................................... 6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................. 1, 2, 6

*Ezell v. City of Chicago*,
  651 F.3d 684 (7th Cir. 2011) ........................................................................ 9

*Knife Rights, Inc. v Bondi*,
  785 F. Supp. 3d 195 (N.D. TX) .................................................................... 3

*Maryland Shall Issue, Inc. v. Moore*,
  116 F.4th 211 (4th Cir. 2024) ....................................................................... 9

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) ....................................................................................... 1

*Minneapolis Star Trib. Co. v. Minn. Comm'r*,
  460 U.S. 575 (1983) ....................................................................................... 8

*National Rifle Association v. Bondi*,
  133 F.4th 1108 (11th Cir. 2025) ................................................................... 7

*New York State Rifle & Pistol Ass'n v. Bruen*,
  597 U.S. 1 (2022) ................................................................................... 1, 2, 9

*Ortega v. Grisham*,
  148 F.4th 1134 (10th Cir. 2025) ............................................................. 1, 11

*Reese v. ATF*,
  127 F.4th 583 (5th Cir. 2025) .................................................................... 10

*Rocky Mountain Gun Owners v. Polis*,
    121 F.4th 96 (10th Cir. 2024) ................................................................... 11

*Snope v. Brown*,
    145 S.Ct. 1534 (2025) .............................................................................. 7

*Teixeira v. Cnty. of Alameda*,
    873 F.3d 670 (9th Cir. 2017) .................................................................... 9

*Teter v. Connors*,
    76 F. 4th 938 (9th Cir. 2023) .................................................................... 1

*United States v. McNulty*,
    684 F. Supp. 3d 14 (D. Mass. 2023) ........................................................ 8

*United States v. Rahimi*,
    602 U.S. 680 (2024) .............................................................................. 3, 5

*VanDerStok v. Garland*,
    145 S. Ct. 857 (2022) ............................................................................... 1

**Statutes**

15 U.S.C. §§ 1241-1245 ................................................................... 3, 4, 11

**Other Authorities**

Antonin Scalia & Bryan A. Garner, READING LAW: THE
    INTERPRETATION OF LEGAL TEXTS (2012) .................................. 11

# IDENTITY AND INTEREST OF AMICUS CURIAE

The Center to Keep and Bear Arms ("CKBA") is a project of Mountain States Legal Foundation ("MSLF"), a Colorado-based non-profit, public interest legal foundation. MSLF was founded in 1977 to defend the Constitution, protect private property rights, and advance economic liberty. CKBA was established in 2020 to continue MSLF's litigation to protect Americans' natural and fundamental right to self-defense. CKBA represents individuals and organizations challenging infringements on the constitutionally protected right to keep and bear arms. *See*, *e.g.*, *Ortega v. Grisham*, 148 F.4th 1134 (10th Cir. 2025); *VanDerStok v. Garland*, 145 S. Ct. 857 (2022); *Sullivan, et al. v. Ferguson*, et al., 3:22-cv-05403 (W.D. Wash.); *Garcia v. Polis*, 1:23-cv-02563-JLK (D. Colo.).

CKBA also files amicus curiae briefs with the U.S. Supreme Court and circuit courts across the nation. *See, e.g.*, *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (representing amicus curiae CKBA); *McDonald v. City of Chicago*, 561 U.S. 742 (2010) (representing amici curiae Rocky Mountain Gun Owners and National Association for Gun Rights); *District of Columbia v. Heller*, 554 U.S. 570 (2008) (representing amicus curiae MSLF); *Teter v. Connors*, 76 F. 4th 938 (9th Cir. 2023), reh'g en banc granted, 2024 WL 719051 (9th Cir. Feb. 22, 2024) (representing amicus curiae MSLF). The Court's decision will directly impact CKBA's current clients and litigation.

# INTRODUCTION

In its landmark decision in the case of *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), the U.S. Supreme Court reaffirmed and significantly expanded the precedent that it set nearly 15 years earlier in *District of Columbia v. Heller*, 554 U.S. 570 (2008). By extending the right to possess a firearm for self-defense to areas outside of the home, the *Bruen* Court indicated that the Second Amendment protects a wide swath of conduct that some courts had not previously considered covered. This decision also represented a sea-change in the way that lower courts are required to doctrinally evaluate and address cases involving Second Amendment-protected rights. Put simply, interest balancing is dead. "The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen,* 597 U.S. at 26 (quoting *Heller*, 554 U.S. at 635).

In place of interest balancing, the Supreme Court in *Bruen* created a two-step inquiry. First, does the "Second Amendment's plain text cover an individual's conduct? [If so] the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. And second, if the plain text is implicated, can the government establish that the regulation is consistent with the nation's historical tradition of arms regulation. *Id.* If it cannot, the law fails. The only time a court would stop at step one, and not proceed to the historical analysis, is if the challenged regulation does

not govern "arms bearing conduct." *United States v. Rahimi*, 602 U.S. 680 at 691 (2024).

In the present case, the District Court failed to proceed to step two, such that it failed to employ *Bruen's* historical framework when analyzing the constitutionality of § 1242 of the Federal Switchblade Act ("FSA"). Instead, the District Court concluded that the relevant prohibitions do not even implicate the Second Amendment because they merely regulate the manner in which switchblades are distributed and acquired, not the "keeping and bearing" of them. The District Court reached this flawed conclusion despite the undeniable fact that a person cannot "keep" or "bear" an arm that they are unable to acquire in the first place, and where the government has intentionally thwarted their access to them. restrictions on their distribution.

Giving short shrift to the ability to actually exercise a constitutional right, the District Court held that because the Second Amendment does not explicitly say "purchase" alongside "keep" and "bear," the "preconditions on the acquisition" of switchblade knives mandated by the FSA are not covered by the Second Amendment's plain text. *Knife Rights, Inc. v Bondi,* 785 F. Supp. 3d 195 (N.D. TX).

This was an error. Restrictions on arms acquisition, like those imposed under § 1242 of the Federal Switchblade Act, generally implicate the Second Amendment, and therefore must be tested under *both* steps of the *Bruen* analysis.

# ARGUMENT

**I. The Federal Switchblade Act of 1958 Regulates Conduct Covered by the Plain Text of the Second Amendment.**

The Federal Switchblade Act of 1958, 15 U.S.C. §§ 1241-1245, prohibits the transportation or distribution in interstate commerce of switchblade knives, as well as their possession on federal lands. Because the FSA infringes upon Appellants' right to keep and bear these common arms, it is violative of the Second Amendment.

In its Opinion granting the Appellees' Motion to Dismiss the Complaint and denying the Appellants' Motion for Summary Judgement, the District Court concluded that the Appellants had failed to state a claim upon which relief could be granted, because § 1242 of the FSA does not directly restrict or prohibit the right to keep and bear switchblade knives, but instead imposes only an "ancillary regulation" that places "preconditions" on their acquisition. Because of that, the District Court concluded that the FSA does not implicate the plain text of the Second Amendment, and proceeding to evaluate the regulation under *Bruen's* historical framework was therefore unnecessary. *Knife Rights,* 785 F. Supp. 3d at 213-14.

But respectfully, the District Court was wrong. The degree or method of infringement on the right to keep and bear arms is not relevant to whether the plain text is implicated, or whether *Bruen's* two-step analysis should be employed. The fact of the matter is that § 1242 of the FSA regulates acquiring an arm, and the Second Amendment's text encompasses that conduct.

4

When considering a challenge to an arms regulation like the FSA, the Court must first determine whether the challenged law regulates conduct covered by the Second Amendment's plain text. *Bruen*, 597 U.S. at 17. Specifically, this threshold inquiry in Second Amendment cases asks three questions: (1) whether the challengers are "part of 'the people' whom the Second Amendment protects," (2) "whether the item at issue is an 'arm,'" and (3) "whether the proposed course of conduct regulates the "keep[ing]" or "bear[ing]" of those arms." *Id.* at 31–33.

If the answer to any of these questions is "no," then "the inquiry ends," and "the government may regulate … without infringing upon the Second Amendment." *Id.* at 114. But if the answer to all three is "yes," then the government has "regulate[d] arms-bearing conduct," and it bears the burden to "'justify its regulation'" by showing that it "is consistent with the principles that underpin our regulatory tradition." *United States v. Rahimi*, 602 U.S. 680 at 691-92 (2024).

Answering the first two questions in the present case is simple, as it is in most cases. The FSA clearly applies to "the people" that the Second Amendment protects. *Cf. Heller*, 554 U.S. at 579–81. Moreover, switchblade knives are obviously "Arms" for purposes of the Second Amendment. *Id.* at 581 (defining "Arms" as bearable instruments "that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another"); *see Bruen*, 597 U.S. at 28 (confirming that "that general definition covers modern instruments that facilitate armed self-defense");

5

*see also Commonwealth v. Canjura*, 494 Mass. 508, 513, 240 N.E.3d 213, 219 (2024)("[F]olding pocketknives not only fit within contemporaneous dictionary definitions of arms—which would encompass a broader category of knives that today includes switchblades—but they also were commonly possessed by law-abiding citizens for lawful purposes around the time of the founding[,] … [t]herefore, the carrying of switchblades is presumptively protected by the plain text of the Second Amendment.").

So, it is the third question— whether the FSA regulates the "keep[ing]" or "bear[ing]" of arms—that is at issue in the present case. A simple review of the FSA makes it clear that it does regulate arms-bearing conduct. Appellants wish to transport, distribute, acquire, and ultimately possess switchblade knives, and the FSA significantly limits their ability and options to do so.

"Keep' means to 'have weapons," *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008). Likewise, "bear" means to "wear, bear, or carry … upon the person or in the clothing or in a pocket, for the purpose … of being armed and ready for offensive or defensive action in a case of conflict with another person," *Id*. at 584. The FSA infringes on the ability of law-abiding citizens to keep and bear switchblade knives by dramatically restricting their ability to acquire these arms in the first place. By prohibiting the interstate manufacture, transport, and distribution of switchblade knives, the FSA shuts down the primary stream in which nearly all consumer goods

flow to the marketplace in the United States. This, in turn, greatly reduces the options that law-abiding citizens have to acquire switchblade knives, and in some cases makes it impossible to acquire these items anywhere other than on the "black market."

The FSA thus plainly "regulates arms-bearing conduct." *Rahimi*, 602 U.S. at 691. *See also Snope v. Brown*, 145 S.Ct. 1534, 1537 (2025) (Thomas, J., dissenting from denial of certiorari) ("A challenger need only show that 'the plain text' of the Second Amendment covers his conduct. … This burden is met if the law at issue 'regulates' Americans' 'arms-bearing conduct.'") (citing *Bruen* and *Rahimi*); *National Rifle Association v. Bondi*, 133 F.4th 1108, 1114 (11th Cir. 2025) (en banc) (identifying the following examples as regulations on "arms-bearing conduct": "prohibitions on gun use by drunken New Year's Eve revelers," "bans on 'dangerous and unusual weapons," and "restrictions on concealed carry.").

But the District Court did not reach this clear conclusion. Instead, it decided that the FSA does not burden or violate the Second Amendment since it merely sets "preconditions on the acquisition of arms," and does not "directly restrict the right to keep and carry them." *Knife Rights,* 785 F. Supp.3d at 214. In reaching this conclusion, the District Court reasoned that since the FSA does not impose a "*de facto* prohibition on possession," but instead simply limits the avenues in which one may *acquire* switchblades and the places in which one may *possess* them, the plain

text of the Second Amendment is not implicated, and there is no need therefore to "subject the regulation to *Bruen's* historical framework." *Id.* at 213. But this line of thinking is dangerously erroneous.

Simply because the Second Amendment's plain text does not list a verb such as "purchase" or "acquire" alongside "keep" and "bear," does not mean that the necessary acquisition of that arm is not protected. If someone does not already own a switchblade knife, or does but wishes to purchase another, he can only "keep and bear" that switchblade knife if he is first able to acquire it. And by prohibiting the distribution of switchblades through interstate commerce, the FSA dramatically restricts the marketplace in which he can acquire one.

Just as a law restricting access to ink and paper would inevitably and impermissibly restrict the ability of people to speak, *see, e.g.*, *Minneapolis Star Trib. Co. v. Minn. Comm'r*, 460 U.S. 575, 592–93 (1983), a similar restriction on acquiring an arm plainly restricts the ability to keep and bear that arm. Any other conclusion would turn the Second Amendment into "'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *Bruen*, 597 U.S. at 70 (quoting *McDonald*, 561 U.S. at 780 (plurality)).

Thus, the FSA necessarily regulates conduct protected by the Second Amendment's plain text. *See, e.g., United States v. McNulty*, 684 F. Supp. 3d 14, 20 (D. Mass. 2023) ("The text of the Second Amendment itself also suggests that the

right to 'keep' firearms necessarily includes an ability to purchase, sell, or otherwise transfer firearms in order to keep oneself properly armed."); *Maryland Shall Issue, Inc. v. Moore*, 116 F.4th 211, 230 (4th Cir. 2024) (Rushing, J., concurring) ("Maryland's law regulates acquiring a handgun, and the Second Amendment's text encompasses that conduct."); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them ... and to purchase and provide ammunition suitable for such arms."); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc) ("[T]he core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms.'" (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)), abrogated on other grounds by *Bruen*, 597 U.S. 1, 142 S. Ct. 2111).

## II. The Court May Wish to Consider Several Recent Cases Supporting Appellants' Arguments.

The Second Amendment would mean nothing if laws preventing people from acquiring arms that they wish to keep and bear did not trigger any constitutional scrutiny. And recently, a growing cadre of district and appellate courts throughout the country have been reaching the same conclusion.

In *Beckwith v. Frey*, 766 F.Supp.3d 123 (D. Me. Feb. 13, 2025), the district court held that a three-day "cooling off" waiting period in Maine violated the Second Amendment, and issued a preliminary injunction barring further enforcement of the law. In rejecting the state's argument that the Second Amendment's text does not

9

protect the acquisition of firearms, the district court held that "[i]f a citizen cannot take possession of a firearm then his or her right to possess a firearm or to carry it away is indeed curtailed, even if, as [the state] claims, the curtailment is modest." *Id.* at 129. The court went on to note by way of example that in *Bruen*, the Supreme Court "did not … draw the obviously silly conclusion that the petitioners must lose because the Second Amendment does not expressly specify home use versus public use or open carry versus concealed carry. Instead, the Court looked to history to inform the meaning of the language of the Second Amendment, while also considering what the language must naturally mean in order for the Second Amendment to protect the right to keep and bear arms." *Id.*, n. 4.

In April 2025, the First Circuit Court of Appeals denied a stay of the preliminary injunction in the *Beckwith* case, rejecting Maine's assertion that it had made a "strong showing" that it was likely to succeed on the merits.

And in *Reese v. ATF*, 127 F.4th 583 (5th Cir. 2025), this Court similarly held that the Second Amendment's right to keep and bear arms includes the right to purchase arms. The court reasoned that "[b]ecause constitutional rights impliedly protect corollary acts necessary to their exercise," it follows that "the Second Amendment 'covers' the conduct (commercial purchases [of firearms]) to begin with." *Id.* at 590. The Court went on to emphasize that "constitutional rights impliedly protect corollary acts necessary to their exercise," and that "[t]o suggest

otherwise proposes a world where citizens' constitutional right to 'keep and bear arms' excludes the most prevalent, accessible, and safe market used to exercise the right." *Id.*

And in August, the Tenth Circuit Court of Appeals reached a similar conclusion when reviewing a district court's denial of a preliminary injunction in a case challenging the State of New Mexico's 7-day firearm waiting period. *See Ortega v. Grisham*, 148 F.4th 1134 (10th Cir. Aug. 19, 2025). "When 'a text authorizes a certain act, it implicitly authorizes whatever is a necessary predicate to that act.'" *Id.* at 1143, *quoting* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 96, 192–94 (2012) (explaining Predicate-act canon). In this case, the predicate act is the acquisition of a switchblade knife. "Common sense dictates that the right to bear arms requires a right to acquire arms, just as the right to free press necessarily includes the right to acquire a printing press, or the right to freely practice religion necessarily rests on a right to acquire a sacred text[;] [and] [l]egal interpretation follows that common sense." *Id.*

In sum, the key question at issue here is whether the Appellants' "proposed course of conduct falls within the Second Amendment." *Rocky Mountain Gun Owners v. Polis*, 121 F.4th 96, 113 (10th Cir. 2024). Appellants wish to keep and bear arms—specifically switchblade knives, and § 1242 of the FSA is designed to— and succeeds at—limiting their ability to do so. The notion that a law explicitly and

11

exclusively designed to prevent people from keeping and bearing arms does not even implicate the Second Amendment is impossible to square with the Supreme Court's repeated admonitions that the Second Amendment is not "a second-class right." *McDonald*, 561 U.S. at 780 (plurality).

## Conclusion

We respectfully request that this Court reverse the District Court's order granting the motion to dismiss and denying Appellants' summary judgment motion.

DATED this 1st day of October 2025.

Respectfully Submitted,

*/s/ William E. Trachman*
William E. Trachman
Grady J. Block
Michael D. McCoy (Application for Admission to be Filed)
Mountain States Legal Foundation
2596 South Lewis Way
Lakewood, CO 80227
(303) 292-2021
mmccoy@mslegal.org

*Attorneys for Amicus Curiae*
*Mountain States Legal Foundation's*
*Center to Keep and Bear Arms*

# CERTIFICATE OF SERVICE

I certify that that on the 1st day of October, 2025, the foregoing Amicus Curiae Brief in Support of Plaintiffs-Appellants was served on counsel for Defendant-Appellees by electronically filing the same with the United States Court of Appeals for the Fifth Circuit via their CM/ECF portal.

<i>/s/ William E. Trachman</i><br>
William E. Trachman

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 2,806 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

<i>/s/ William E. Trachman</i><br>
William E. Trachman