# In the
# United States Court of Appeals
# for the Fifth Circuit

◆

KNIFE RIGHTS, INC.; RUSSELL ARNOLD; RGA AUCTION SOLUTION, doing business as FIREARM SOLUTIONS; JEFFERY FOLLODER; MOD SPECIALTIES; EVAN KAUFMANN; ADAM WARDEN; RODNEY SHEDD,

*Plaintiffs–Appellants*,

v.

PAMELA BONDI, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants–Appellees.*

◆

On Appeal from the United States District Court for the Northern District of Texas, Fort Worth Division
Case No. 4:24-cv-926

◆

## BRIEF OF THE NATIONAL RIFLE ASSOCIATION OF AMERICA AS *AMICUS CURIAE* IN SUPPORT OF APPELLANTS AND REVERSAL

◆

ERIN M. ERHARDT
  *Counsel of Record*
JOSEPH G.S. GREENLEE
NATIONAL RIFLE ASSOCIATION
OF AMERICA – INSTITUTE FOR
LEGISLATIVE ACTION
11250 Waples Mill Rd.
Fairfax, VA 22030
(703) 267-1161
eerhardt@nrahq.org

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

- Plaintiffs-Appellants:
    - Knife Rights, Inc.
    - Russell Arnold
    - RGA Auction Solution, d/b/a Firearm Solutions
    - Jeffery Folloder
    - MOD Specialties
    - Evan Kaufmann
    - Adan Warden
    - Rodney Shed

- Counsel for Plaintiff-Appellant:
    - John W. Dillon, Dillon Law Group APC
    - Brent Cooper, Cooper & Scully PC

- Defendants-Appellees:
    - Pamela Bondi, in her official capacity as Attorney General of the United States
    - United States Department of Justice

- Counsel for Defendants-Appellees:
    - Syed Ahmad
    - Sean Janda
    - United States Department of Justice

- *Amicus Curiae*: National Rifle Association of America

- Counsel for *Amicus Curiae*:
    - Erin M. Erhardt, National Rifle Association
    - Joseph G.S. Greenlee, National Rifle Association

The National Rifle Association of America has no parent corporation, nor is there any publicly held corporation that owns 10% or more of its stock.

/s/ *Erin M. Erhardt*
Counsel for *Amicus Curiae*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................i

TABLE OF AUTHORITIES....................................................................iv

STATEMENT OF *AMICUS CURIAE*......................................................1

CONSENT TO FILE ..............................................................................1

SUMMARY OF ARGUMENT .................................................................2

ARGUMENT ..........................................................................................4

   I.  All arms regulations must be justified by historical tradition........4

   II.  The Federal Switchblade Act triggers the plain text of the Second Amendment...................................................................6

   III. The lower court's decision shoehorns consideration of a regulation's burden into the plain text analysis. ...........................8

CONCLUSION .....................................................................................13

CERTIFICATE OF COMPLIANCE.......................................................15

CERTIFICATE OF SERVICE...............................................................16

# TABLE OF AUTHORITIES

**Cases**

*Caetano v. Massachusetts,*
    577 U.S. 411 (2016) .................................................................. 7

*District of Columbia v. Heller,*
    554 U.S. 570 (2008) ............................................................ *passim*

*Guns Save Life, Inc. v. Kelly,*
    2025 IL App (4th) 230662 ...................................................... 12

*Knife Rts, Inc. v. Bondi,*
    785 F. Supp. 3d 195 (N.D. Tex. 2025) ........................... *passim*

*McRorey v. Garland,*
    99 F.4th 831 (2024) .................................................... 9, 10, 11

*New York State Rifle Ass'n v. Bruen,*
    597 U.S. 1 (2022) ............................................................. *passim*

*Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
    127 F.4th 583 (5th Cir. 2025) ............................................... 13

*Sedita v. United States,*
    763 F. Supp. 3d 63 (D.D.C. 2025) .................................. 11, 12

*Snope v. Brown,*
    145 S. Ct. 1534 (2025) ............................................................ 8

*United States v. Diaz,*
    116 F.4th 458 (5th Cir. 2024) .............................................. 11

*United States v. Rahimi,*
    602 U.S. 680 (2024) .......................................... 6, 7, 10, 11

**Constitutional Provisions**

U.S. Const. amend. II ................................................................. *passim*

**Statutes**

15 U.S.C. §§ 1242–1243 ............................................................ 2, 3, 13

## STATEMENT OF *AMICUS CURIAE*[1]

The National Rifle Association of America (NRA) is America's oldest civil rights organization and foremost defender of Second Amendment rights. It was founded in 1871 by Union officers—a general and a colonel—who, based on their Civil War experiences, sought to promote firearms marksmanship and expertise amongst the citizenry. Today, the NRA is America's leading provider of firearms marksmanship and safety training for both civilians and law enforcement. The NRA has approximately four million members, and its programs reach millions more.

This case concerns the NRA because it is essential for the preservation of the Second Amendment that courts apply the proper threshold analysis under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

## CONSENT TO FILE

All parties consented to the filing of this brief.

---

[1] No counsel for a party authored this brief in any part. No party or counsel contributed money intended to fund its preparation or submission. No person other than *Amicus* and its members contributed money intended to fund its preparation or submission.

## SUMMARY OF ARGUMENT

Plaintiffs challenge the Federal Switchblade Act, which prohibits the "interstate commerce" of "any switchblade knife," and prohibits the "manufacture[], s[ale], or possess[ion] of any switchblade knife" "within any Territory or possession of the United States, within Indian country … or within the special maritime and territorial jurisdiction of the United States." 15 U.S.C. §§ 1242–43.

After determining that Plaintiffs had standing to challenge only Section 1242, the district court found that "Section 1242 does not violate the Second Amendment." *Knife Rts, Inc. v. Bondi*, 785 F. Supp. 3d 195, 212, 215 (N.D. Tex. 2025). This brief focuses on the errors in the district court's Second Amendment analysis.

The Supreme Court laid out the proper analysis for regulating arms in *New York State Rifle Ass'n v. Bruen*, 597 U.S. 1, 24 (2022). That analysis applies to all regulations on arms, even those that fall into categories the Court has noted in dicta are "presumptively lawful."

Switchblades are indisputably "bearable arms." And, as the district court correctly recognized, the right to possess—or "keep"—arms necessarily includes the right to acquire them. Thus the Federal

Switchblade Act clearly implicates the Second Amendment and is subject to the *Bruen* analysis.

Instead of proceeding to the historical analysis, however, the district court determined that "ancillary regulations that impose preconditions on the acquisition of arms ought to be treated differently from those that directly restrict the right to keep and carry them." *Knife Rts.*, 785 F. Supp. 3d at 215. This conclusion cannot be allowed to stand.

As stated, the Supreme Court has made clear that there is only one test for regulations that implicate the Second Amendment. This test applies equally to regulations that fall into one of *District of Columbia v. Heller*'s "presumptively lawful" categories of regulations, 554 U.S. 570, 626–27 & n.26 (2008), as to those that do not; so too it applies equally to so-called "ancillary" regulations as to "direct" regulations. Moreover, consideration as a threshold matter of whether a regulation is sufficiently burdensome as to trigger the Second Amendment's protection is an impermissible workaround to avoid *Bruen*'s historical analysis, under which "how … the regulations burden" a citizen's Second Amendment rights is one of the metrics. 597 U.S. at 29.

## ARGUMENT

### I. All arms regulations must be justified by historical tradition.

The Supreme Court has made clear that *all* arms regulations must be justified by historical tradition—even those it has deemed "presumptively lawful." *See Heller*, 554 U.S. at 626–27, n.26.

In *Bruen*, the Supreme Court set forth "*the standard* for applying the Second Amendment": "When the Second Amendment's plain text" is triggered, "[t]he government must … justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 597 U.S. at 24 (emphasis added). "*Only then*," the Court continued, "may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id.* (quotation omitted and emphasis added).

The *Bruen* court twice reiterated that the "only" way the government can justify a regulation is with historical tradition. *Id.* at 17 ("*Only if* a[n arms] regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.") (quotation marks omitted and emphasis added); *id.* at 34 ("*Only if* respondents carry that

burden can they show that the pre-existing right codified in the Second Amendment … does not protect petitioners' proposed course of conduct.") (emphasis added).

*Bruen* and *Heller* both demonstrate that the "presumptively lawful" categories listed in *Heller*—such as "laws imposing conditions and qualifications on the commercial sale of arms", *Heller*, 554 U.S. at 626–27—are subject to the same standard as any other regulation. Nothing suggests that such categorization exempts them from the plain text or otherwise subjects them to a different constitutional standard. Indeed, *Heller* itself specified that there would "be time enough to expound upon the *historical justifications for the exceptions* we have mentioned if and when those exceptions come before us." *Id*. at 635 (emphasis added).

The *Bruen* Court specifically applied the text-and-history analysis when considering a regulation deemed "presumptively lawful" in *Heller*. New York "attempt[ed] to characterize [its] proper-cause requirement as a 'sensitive-place' law." *Bruen*, 597 U.S. at 30. Regardless of any presumption, the Court consulted "the historical record" to conclude that "there is no historical basis for New York to effectively declare the island of Manhattan a 'sensitive place.'" *Id*. at 30–31. *Bruen* thus held the

"presumptively lawful" "sensitive place" regulation to the same standard that applies to all arms regulations.

The Court has clearly and repeatedly defined its Second Amendment test. *See Bruen*, 507 U.S. at 17, 24; *United States v. Rahimi*, 602 U.S. 680, 681 (2024) ("the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin the Nation's regulatory tradition."). The Court has never articulated an exception for "presumptively lawful" regulations.

Even if the Federal Switchblade Act is a "condition[] and qualification[] on the commercial sale of arms," the government must still show that it falls within this country's tradition of arms regulation.

## II. The Federal Switchblade Act triggers the plain text of the Second Amendment.

"When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. The district court "assum[ed] without deciding that Knives are arms under the Second Amendment." *Knife Rts.,* 785 F. Supp. 3d at 212; *see also id*. at 214 n.7 ("The Court again reiterates that for the purposes of this Motion to Dismiss it is assuming without deciding that knives are arms under the Second Amendment."). The district court's

assumption was correct and should be made explicit: knives, including switchblades, are indisputably "bearable arms" protected by the plain text of the Second Amendment.

The Supreme Court conducted the plain text analysis of the Second Amendment in *Heller*, 554 U.S. at 576–600. *Heller* held that "the Second Amendment extends, prima facie, to all instruments that constitute bearable arms." *Id*. at 582. That Court has reaffirmed *Heller's* holding three times. *Caetano v. Massachusetts*, 577 U.S. 411, 411 (2016) (quoting *Heller*, 554 at 582, and describing *Heller's* definition of "Arms" as a holding); *Bruen*, 597 U.S. at 28 (quoting *Heller*, 554 U.S. at 582); *Rahimi*, 602 U.S. at 691 (quoting *Heller*, 554 U.S. at 582).

*Heller's* "general definition" of "Arms," *Bruen*, 597 U.S. at 28, "includes any 'weapon of offence or thing that a man wears for his defence, or takes into his hands,' that is 'carried … for the purpose of offensive or defensive action,'" *Caetano*, 577 U.S. at 416 n.3 (Alito, J., joined by Thomas, J., concurring) (quoting *Heller*, 554 U.S. at 581, 584) (brackets and citations omitted). It also "covers modern instruments that facilitate armed self-defense." *Bruen*, 597 U.S. at 28; *cf. Caetano*, 577 U.S. at 416 n.3 (Alito, J., joined by Thomas, J., concurring).

The fact that switchblades are bearable arms is all that is needed to satisfy the Second Amendment's plain text inquiry. "Under the plain text of the Second Amendment, the challengers' only burden is to show that [switchblades] are bearable 'Arms'—i.e., 'weapons of offence.'" *Snope v. Brown*, 145 S. Ct. 1534, 1537 (2025) (Thomas, J., dissenting from the denial of certiorari) (quoting *Heller*, 554 U.S. at 581) (brackets omitted). Thus, the government bears the burden of "demonstrating that [its regulation] is consistent with the Nation's historical tradition of [arms] regulation." *Bruen*, 597 U.S. at 24.

## III. The lower court's decision shoehorns consideration of a regulation's burden into the plain text analysis.

The Supreme Court has repeatedly stated that its text-and-history test applies to *all* arms regulations. *See supra* Part I. The district court assumed that switchblades are "arms" and correctly recognized that "[a]s a necessary predicate to the right of possession, the right of acquisition is protected, too." *Knife Rights*, 785 F. Supp. 3d at 212. Thus, the regulations imposed by the Federal Switchblade Act clearly implicate the Second Amendment.

However, instead of proceeding to the historical analysis, as mandated by *Bruen*, the district court instead concluded that, as a

threshold matter, the Federal Switchblade Act's regulation of commerce in bearable arms does not even trigger the Second Amendment's protection. Rather, the court determined that "ancillary regulations that impose preconditions on the acquisition of arms ought to be treated differently from those that directly restrict the right to keep and carry them." *Knife Rights*, 785 F. Supp. 3d at 214. Relying on *McRorey v. Garland*, 99 F.4th 831 (2024), the court concluded that the Federal Switchblade Act does "not amount to 'a *de facto* prohibition on possession'" so it is not "subject … to *Bruen*'s historical framework." *Knife Rights*, 785 F. Supp. 3d at 213 (quoting *McRorey*, 99 F.4th at 840).

The district court's reliance on *McRorey* suffers from infirmities that have already been addressed by both this Circuit and other courts. Put simply, *McRorey* relied on Supreme Court dicta in *Bruen* and *Heller* to uphold a regulation instituting expanded background checks for firearms purchasers aged 18 to 20. *McRorey*, 99 F.4th at 833–34.

The *Bruen* and *Heller* Courts both went out of their way to note that those opinions did not upend certain firearms regulations. *Heller*, 554 U.S. at 627 n.26; *see also id*. at 626–67 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of

9

firearms by felons and the mentally, or … laws imposing conditions and qualifications on the commercial sale of arms."); *Bruen*, 597 U.S. at 38 n.9 ("[N]othing in our analysis should be interpreted to suggest the unconstitutionality of the 43 States' 'shall-issue' licensing regimes."). This dictum did not confirm the constitutionality of the regulations, however; nor did it suggest that those regulations were subject to a different analysis than other arms regulations. Rather, the *Heller* Court explained that "there will be time enough to expound upon *the historical justifications for the exceptions*" if and when regulations falling into those exceptions come before the Court. *Heller*, 554 U.S. at 635 (emphasis added). And the *Bruen* Court specifically stated that "we do not rule out constitutional challenges to shall-issue regimes." 597 U.S. at 38 n.9.

In *McRorey*, this Court noted that, even if the *Heller* and *Bruen* statements are dicta, "[w]e, however, are generally bound by Supreme Court dicta, especially when it is recent and detailed. And it doesn't get more recent or detailed than *Bruen*." 99 F.4th at 837 (quotation omitted). That was true when *McRorey* was decided, but the Supreme Court subsequently decided *Rahimi*, 602 U.S. at 680. Since *Rahimi*, this Court has recognized that "[t]he mentions of felons in [previous Supreme Court

decisions] are mere dicta" and "that dicta cannot supplant the most recent analysis set forth by the Supreme Court in *Rahimi*." *United States v. Diaz*, 116 F.4th 458, 466 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 2822 (2025). Consequently, this Court—rather than holding a "presumptively lawful" regulation to a different standard—applied "*Bruen*'s historical inquiry into our Nation's tradition" to a statute "regulating firearm possession by felons." *Id*. The panel specifically but "respectfully disagree[d] with" the approach of other circuits which continued to rely solely on *Heller*'s dicta, "believ[ing] that a full historical analysis is required." *Id*. at 466 n.2.

Other courts have recognized that early consideration of the level of burden or abuse caused by a regulation cannot be used to avoid *Bruen*'s historical test. As the Court of Appeals for the District of Columbia pointed out, "*McRorey*'s attempt to wedge Bruen's footnote nine into Step One is awkward." *Sedita v. United States*, 763 F. Supp. 3d 63, 78 (D.D.C. 2025) (citing *Bruen*, 597 U.S. at 38 n.9) (recognizing that "presumptively lawful" regulations "can be put towards abusive ends"). It conflates Step One's plain text analysis—"an individual-centric inquiry" which "focuses on the complainant's proposed course of conduct and determines whether

that desired behavior falls within his individual, preexisting right to keep and bear arms"—with Step Two's "government-focused analysis" which "asks whether the regulation at issue falls within this nation's history and tradition of [arms] regulation." *Sedita*, 765 F. Supp. 3d at 78 (emphases omitted). To argue the extent of a regulation's burden at the plain text stage, in other words, "conflates the protections offered in the operative phrase 'shall not be infringed' and the conduct to be protected, 'the right of the people to keep and bear arms.'" *Guns Save Life, Inc. v. Kelly*, 2025 IL App (4th) 230662, ¶ 150 (DeArmond, J., dissenting). Indeed, *Bruen* itself explained that "how … the regulations burden a law-abiding citizen's right" is a question of tradition, one of the "metrics" that helps determine whether modern and historical "regulations [are] relevantly similar under the Second Amendment." 597 U.S. at 29.

Keeping—including possessing, through commercial transactions or otherwise—bearable arms such as switchblades is protected conduct. Whether and to what extent that protected conduct is infringed—including whether a regulation is constitutionally permissible or unconstitutionally abusive—must be determined through historical analysis.

"The threshold textual question is ... whether the Second Amendment 'covers' the conduct (commercial purchases) to begin with." *Reese v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 127 F.4th 583, 590 (5th Cir. 2025). This Circuit has held that "it does." *Id*. Indeed, "[t]he baleful implications of limiting the right at the outset by means of narrowing regulations not implied in the text are obvious; step by step, other limitations on sales could easily displace the right altogether." *Id*. Yet that is precisely what the district court's decision threatens by determining that regulations on interstate commerce in arms do not even implicate the Second Amendment.

## CONCLUSION

The district court's judgment should be reversed, and this case should be remanded to determine whether the Federal Switchblade Act is consistent with this nation's historical tradition of arms regulation.

Respectfully submitted,

/s/ *Erin M. Erhardt*
Erin M. Erhardt
   *Counsel of Record*
Joseph G.S. Greenlee
NATIONAL RIFLE ASSOCIATION
OF AMERICA – INSTITUTE FOR
LEGISLATIVE ACTION
11250 Waples Mill Rd.

Fairfax, VA 22030
(703) 267-1161
eerhardt@nrahq.org

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 2,487 words, excluding the parts of the brief excluded by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in 14-point, proportionally spaced Century Schoolbook font.

/s/ *Erin M. Erhardt*
Counsel for *Amicus Curiae*

**CERTIFICATE OF SERVICE**

I certify that on October 1, 2025, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ *Erin M. Erhardt*
Counsel for *Amicus Curiae*